UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

MIQUEL MORROW, *et al.*,

Defendants.

Criminal Action No. 04-355 (CKK)

**MEMORANDUM OPINION**
(June 13, 2005)

Currently before the Court are two motions submitted by Defendants in this case:  (1)

Defendant Miquel Morrow's Motion for Judgment of Acquittal[1] as to Count I of the Indictment

(RICO Conspiracy), pursuant to Federal Rule of Criminal Procedure 29(a); and (2) Defendant

Aaron Perkins' oral Motion for Judgment of Acquittal, also directed at Count I of the

Indictment.[2]  Defendant Morrow's motion makes two central arguments.  First, after citing a

---

[1] Pursuant to the Court's previous Order allowing Defendants to implicitly adopt motions filed by one of their co-defendants, the Court shall consider Defendant Morrow's more generalized motion as relating to all Defendants.

[2] The Court notes that Defendant Perkins' motion, submitted orally before the Court on the afternoon of Friday, June 10, 2005, after the close of the Government's case, was in violation of its Scheduling Order of June 6, 2005, which specifically directed that Defendants' anticipated Rule 29 Motion(s) for a Judgment of Acquittal, relating to Count I of the Superseding Indictment (the RICO conspiracy), were due by Wednesday, June 8, 2005 at 7:45 A.M.  *See United States v. Morrow*, Crim. No. 04-355, at 1 (D.D.C. June 6, 2005) (scheduling order).  Defendant Perkins' oral motion raised for the first time certain arguments and cases relating to the failure of the Government to provide evidence showing that he was guilty of the charged RICO conspiracy.  As such, his untimely motion, made without notice, effectively undermined the ability of the Government to respond.  However, despite the fact that his motion was untimely, the Court agreed to consider the merits of Defendant Perkins' argument.  In contrast, Defendant Morrow's motion was submitted in writing in accordance with the Court's previous Scheduling Order.
Later on June 10, 2005, Defendant Perkins then submitted, via facsimile, a Supplemental Motion for Judgment of Acquittal Under Federal Rule 29 that essentially memorialized the arguments that he made before the Court in his oral motion for judgment of acquittal.  *See* Def.

series of Eighth Circuit cases, including *United States v. Kragness*, 830 F.2d 842, 855 (8th Cir.

1987), and *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 769 (8th Cir. 1992), he contends that

the Government has failed to introduce sufficient evidence for the jury to find that a RICO

enterprise existed because "[n]o evidence of an ascertainable structure distinct from that inherent

in the pattern of Racketeering has been presented." Def. Morrow's Mot. for J. of Acquittal at ¶1,

1. Instead, Defendant Morrow asserts that "[t]he testimony of [Government's witness

Nourredine] Chtaini at best sets out individuals who associated to commit sporadic crime." *Id.*

Second, Defendant Morrow argues that even if an "enterprise" existed, "there was

insufficient evidence to show that the assaults on Edwin Arrington on April 23, 2004 and May

15, 2004 were committed to further that enterprise." *Id.* at ¶ 2, 1-2. According to Defendant

Morrow, the evidence -- at best -- indicates that Mr. Arrington was targeted because he failed to

return a gun that he had stolen from members connected with the charged conspiracy. *Id.*

Defendant Morrow suggests that because the motive for the assaults was "revenge," the assaults

furthered no goal of the RICO conspiracy and therefore should be considered beyond the scope

of the charged conspiracy. *Id.*

Defendant Perkins' Motion for Judgment of Acquittal takes a slightly different tack.

Instead of focusing on the kind of generalized analysis offered by Defendant Morrow, Defendant

Perkins' motion focuses on the evidence adduced in the Government's case-in-chief as it

specifically relates to him. Essentially, Defendant Perkins contends that he cannot be guilty of a

RICO conspiracy violation under 18 U.S.C. § 1962(d) given (1) his limited -- at best --

---

Perkins' Suppl. Mot. for J. of Acquittal. The Government filed its written response on the
afternoon of Saturday, June 11, 2005. This Memorandum Opinion shall deal with all arguments
put forward by Defendant Perkins, both oral and written.

participation in the events alleged, (2) the fact that he exerted no management or control over the

enterprise, and (3) the fact that he is only charged with one act of racketeering.  Defendant

Perkins emphasizes that the Government has not alleged, and has failed to submit, any evidence

indicating that he was involved in the planned January 21, 2004 armed robbery of an armored

car, the two Counts alleging "assault with intent to kill," and five of the charged armed bank

robberies.  *See* Def. Perkins' Suppl. Mot. for J. of Acquittal at 2.  As such, citing to *Sedima,*

*S.P.R.I. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), *Efron v. Embassy*

*Suites (P.R.), Inc.*, 223 F.3d 12 (1st Cir. 2000), and *Apparel Art Int'l, Inc. v. Jacobson*, 967 F.2d

720 (1st Cir. 1992), Defendant Perkins urges that the Court enter a judgment of acquittal as to

Count I of the Indictment in his favor.

Upon a consideration of Defendants' motions, the Government's subsequent Oppositions,

the entire record presented at trial upon the Government's close of evidence, and the relevant

case law, the Court shall deny Defendant Morrow's Motion for Judgment of Acquittal as to

Count I of the Indictment and shall also deny Defendant Perkins' Motion for Judgment of

Acquittal as to Count I.

## I: BACKGROUND

On February 15, 2005, the Grand Jury in the above-captioned case returned a twenty

count Superseding Indictment against the six remaining defendants[3] in this case -- Miquel

Morrow, Lionel Stoddard, Carlos Aguiar, Bryan Burwell, Aaron Perkins, and Malvin Palmer

---

[3] Messers. Nourredine Chtaini, Omar Holmes, and Guidel Olivares were also associated
with the Defendants as part of the relevant conspiracies, but are now cooperating with the
Government and are not defendants in this trial.

(collectively, "Defendants").[4]  Count I of the Indictment charges all six Defendants with a conspiracy to participate in a Racketeer Influenced Corrupt Organization ("RICO"), in violation of 18 U.S.C. § 1962(d), based upon alleged racketeering acts involving armed robberies of four banks in the District of Columbia (Acts 1-4) and two banks in the District of Maryland (Acts 5-6), as well as three acts involving murder (Acts 7-9).  Count II charges all six Defendants with a conspiracy to commit offenses against the United States, in violation of 18 U.S.C. § 371, by "unlawfully and knowingly" combining, conspiring, confederating, and agreeing "to assault and put in jeopardy the life of persons by the use of dangerous weapon[s] in the commission of the offense of bank robbery, in that they would, while armed with firearms, by force and violence, against resistance and by putting in fear, steal and take from persons and from the immediate actual possession of persons, property of value, that is, money belonging to, and in the care, custody, control, management, and possession of banks, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18 United States Code, Sections 2113(a) and (d)."

Substantive charges involving armed bank robbery (Counts III, VII, X, XV) in violation of 18 U.S.C. §§ 2113(a), (d) and 18 U.S.C. § 2; using and carrying a firearm during a crime of violence (Counts IV, VIII, XI, XVI) in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii), (B)(i)-(ii), and 18 U.S.C. § 2; unlawful possession of a firearm by a convicted felon (Counts V, VI, IX, XII-

---

[4] Previous Indictments were handed down by the Grand Jury on August 5, 2004 and November 9, 2004.  Due to the motions schedule, which was aimed at getting most of the relevant issues and facts out in the open at the earliest possible point, a majority of the motions filed by the Government and the Defendants use the numbering scheme present in the November 9, 2004 Superseding Indictment when referring to specific counts.  However, for the purposes of complete accuracy, the Court will refer to the structure and scheme employed by the February 15, 2005 Superseding Indictment, as it is the controlling Indictment at trial.

XIV, XVII, XX) in violation of 18 U.S.C. § 922(g)(1); and assault with intent to kill (Counts

XVIII, XIX) are charged against the specific defendants named in those counts.[5]  The armed bank

robberies were allegedly accomplished while the Defendants brandished weapons and wore body

armor, hoods, masks, bandanas, and heavy clothing to avoid identification.  The assaults also

involved the use of firearms.

       According to the Superseding Indictment, the purposes of the RICO conspiracy charged

in Count I

> included, among other things, the following: (i) committing robberies, including
> bank robberies, in the District of Columbia, the District of Maryland, and
> elsewhere for the purposes of obtaining money and other things of value; (ii)
> protecting members of the enterprise; (iii) maintaining in safe places the weapons,
> body armor, and money of the enterprise; and (iv) retaliating against persons who
> interfered with the operation of the enterprise, including the actual and perceived
> thefts of weapons by non-members of the enterprise.

Superseding Indictment (Count I) ¶ 7.  The objects of the Section 371 conspiracy charged in

Count II are similar:  "to obtain money and other things of value; to protect members of the

conspiracy; and to maintain in safe places the weapons, body armor, and money of the

conspiracy."  *Id.* (Count II) ¶ 3.  Each charged conspiracy is alleged to have operated "from on or

about January 21, 2004 . . . up to and including on or about August 5, 2004, within the District of

Columbia, the District of Maryland, and elsewhere."  *Id.* (Count I) ¶ 8, (Count II) ¶ 2.  Numerous

overt acts relating to each conspiracy are also alleged in each count.  All of the overt acts alleged

and subsequent substantive counts (Counts III-XX) are said to have occurred within the January

---

[5] Count XX, a charge of unlawful possession of a firearm by a felon in violation of 18
U.S.C. § 922(g)(1) against Defendant Carlos Aguiar, is the only substantive offense that does not
arise directly out of one of the bank robberies alleged.  Rather, this count arises from the fact that
Defendant Aguiar allegedly possessed a firearm when he was stopped by police and arrested on
August 4, 2004.

21, 2004 – August 5, 2004 time-span.

## II:  LEGAL STANDARDS

Rule 29(a) of the Federal Rules of Criminal Procedure provides:  "After the government closes its evidence or after the close of all evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  The Court must deny a motion for judgment of acquittal when, considering the evidence in the light most favorable to the Government, the evidence "is sufficient to permit a rational trier of fact to find all the essential elements of the crime beyond a reasonable doubt."  *United States v. Kayode*, 254 F.3d 204, 212 (D.C. Cir. 2001); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "In ruling on a motion for a judgment of acquittal, 'the trial court must view the evidence in the light most favorable to the Government giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact.'"  *United States v. Treadwell*, 760 F.2d 327, 333 (D.C. Cir. 1985) (quoting *United States v. Davis*, 562 F.2d 681, 683 (D.C. Cir. 1977)); *United States v. Sutton*, 801 F.2d 1346, 1358 (D.C. Cir. 1986).  This stringent standard contemplates that the ultimate decision of guilt or innocence should be left to the jury, and that it is the province of the jury to credit certain testimony and reject other testimony.  *United States v. Davis*, 763 F. Supp. 645, 648 (D.D.C. 1991) ("Sentencing courts should therefore be wary of rejecting a jury's assessment of witness credibility.").  "When a reasonable mind might fairly have a reasonable doubt of guilt or might fairly have none, the decision is for the jury to make."  *United States v. Herron*, 567 F.2d 510, 514 (D.C. Cir. 1977) (citation omitted); *see also United States v. Bethea*, 442 F.2d 790, 792 (D.C. Cir. 1971).

However, "where the evidence viewed in the light most favorable to the prosecution is such that 'a reasonable juror *must* have a reasonable doubt as to the existence of any of the essential elements of the crime,' a motion for judgment of acquittal must be granted." *United States v. Foster*, 783 F.2d 1087, 1088 (D.C. Cir. 1986) (quoting *Bethea*, 442 F.2d at 792) (emphasis in original). "[T]he trial judge should not allow the case to go to the jury if the evidence is such as to permit the jury to merely conjecture or to speculate as to defendant's guilt." *Bethea*, 442 F. 2d at 792; *see also United States v. Staten*, 581 F.2d 878, 882 (D.C. Cir. 1978) (the judge must not let the jury "act on what would necessarily be only surmise and conjecture, without evidence"). In its review of the record, the court is not to "indulge in fanciful speculation or bizarre reconstruction of the evidence" and -- while viewing the evidence in the light most favorable to the Government -- should "accord the [G]overnment the benefit of only 'legitimate inferences.'" *United States v. Recognition Equip. Inc.*, 725 F. Supp. 587, 588 (D.D.C. 1989) (quoting *United States v. Singleton*, 702 F.2d 1159, 1163 (D.C. Cir. 1983)). "[I]n order to find a legitimate and nonspeculative inference of guilt the [G]overnment must articulate a rational basis in the evidence upon which that inference can arise." *Id.*

The evidence in question "need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Maxwell*, 920 F.2d 1028, 1035 (D.C. Cir. 1990) (quoting *United States v. Harrell*, 737 F.2d 971, 979 (11th Cir. 1984), *cert. denied*, 470 U.S. 1027, 105 S.Ct. 1392, 84 L.Ed.2d 781 (1985)). Moreover, "[t]here is no requirement of any direct evidence against the defendant; the evidence may be entirely circumstantial." *United States v. Poston*, 902 F.2d 90, 94 n.4 (D.C. Cir. 1990) (citing *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984); *United States v. Simmons*, 663 F.2d 107, 108

-7-

(D.C. Cir. 1979)).  "No distinction is made between direct and circumstantial evidence in evaluating the sufficiency of evidence supporting a guilty verdict," *Maxwell*, 920 F.2d at 1035, "since it is 'the traditional province of the jury to assess the significance of circumstantial evidence, and to determine whether it eliminates all reasonable doubt.'" *Treadwell*, 760 F.2d at 333 (quoting *United States v. Staten*, 581 F.2d 878, 883 (D.C. Cir. 1978)).  "Similarly, the government, when using circumstantial evidence, need not negate all possible inferences of innocence that may flow therefrom." *Id.* (citation omitted).  As such, "[i]t is only when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the judge may properly take the case from the jury." *Davis*, 562 F.2d at 683 (citations omitted); *see also United States v. Durant*, 648 F.2d 747, 750 (D.C. Cir. 1981) (same).  "If the evidence is such that a reasonable man may have reasonable doubt as to the defendant's guilt, the case should go to the jury." *Bethea*, 442 F.2d at 792.

### III: DISCUSSION

The Court shall begin its analysis of the twin Rule 29(a) motions currently before it by first discussing the merits of Defendant Morrow's motion, and then proceeding to scrutinize the claims set forth by Defendant Perkins' at the oral discussion held before the Court on Friday, June 10, 2005 and in his supplemental motion subsequently filed.

A.      *Defendant Morrow's Motion*

With no citations to the record and only a brief, generalized review of the evidence presented during the Government's case-in-chief, Defendant Morrow's Motion for Judgment of Acquittal as to Count I of the Indictment (RICO Conspiracy) focuses on two major arguments: (1) the Government, even given the benefit of its due inferences on a Rule 29(a) motion, has

failed to introduce evidence sufficient to establish a RICO conspiracy, and (2) even if the

Government has produced evidence sufficient to establish a RICO conspiracy, the two assaults of

Mr. Edwin Arrington -- on April 23, 2004 and May 15, 2004 -- furthered no goal of the RICO

conspiracy and fell outside of the enterprise.  The Court shall deal with each assertion in turn.

     1.     <u>Enterprise Element of the RICO Conspiracy</u>

     i.     *The Requirements*

   In this case, the Superseding Indictment charging the Defendants tracks the language of

the RICO statute, charging in relevant part:

> At times relevant to this Indictment, the defendants . . . together with others
> known and unknown to the Grand Jury, were members and associates of a
> criminal organization whose members and associates engaged in acts of violence,
> including attempted murders and robberies, and which operated principally in the
> District of Columbia.  This organization constituted an "enterprise," as defined by
> Title 18, United States Code, Section 1961(4), that is, a group of individuals
> associated in fact.  The enterprise constituted an ongoing organization whose
> members functioned as a continuing unit for a common purpose of achieving the
> objectives of the enterprise.  The enterprise was engaged in, and its activities
> affected, interstate commerce.

Superseding Indictment, Count I (RICO Conspiracy).  For the purposes of the RICO statute, the

term enterprise encompasses "any individual, partnership, corporation, association, or other legal

entity, and any union or *group of individuals associated in fact although not a legal entity*."  18

U.S.C. § 1961(4) (emphasis added).  To prove the existence of such an enterprise, the

Government must establish "(1) a common purpose among participants, (2) organization, and (3)

continuity."  *United States v. Perholtz*, 842 F.2d 343, 362 (D.C. Cir. 1988), *cert. denied*, 488

U.S. 821, 109 S.Ct. 65 (1988).  In *Perholtz*, the D.C. Circuit held that "[a]lthough organization is

not *necessarily* established by proof of a pattern of racketeering activity, the existence of the

enterprise may be inferred from proof of the pattern." *Id.* at 362; *see also United States v. White*, 116 F.3d 903, 924, (D.C. Cir. 1997), *cert. denied*, 522 U.S. 960, 118 S.Ct. 390 (1997); *cf.* O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 56.11 (5th ed. 2000).

As the D.C. Circuit noted, "[t]he second element -- 'organization' or 'structure' -- is the most difficult to show." *Perholtz*, 842 F.2d at 362. Defendant Morrow's motion specifically attacks this element, labeling it the "ascertainable structure" requirement. *See* Def. Morrow's Mot. for J. of Acquittal at ¶ 1, 1. In support of his argument in favor of acquittal, Defendant Morrow relies on a series of cases from the Eighth Circuit that attempt to properly interpret the Supreme Court's admonishment in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), that "[e]vidence of an ongoing organization, formal or informal" and "evidence that the various associates function as a continuing unit" are essential to establish the enterprise element of a RICO conspiracy. *Id.* at 583, 101 S.Ct. 2524. In doing so, the *Turkette* Court noted that the enterprise "is an entity separate and apart from the pattern of activity in which [the enterprise] engages" and "at all times remains a separate element which must be proved by the Government." *Id.*

Based upon its interpretation of language within the *Turkette* decision, the Eighth Circuit requires that the structure of the alleged RICO conspiracy must be proven by evidence other than that of the pattern of racketeering:

> [An association-in-fact] encompass[es] only an association having an ascertainable structure which exists for the purpose of maintaining operations directed toward an economic goal that has an existence that can be defined apart from the commission of the predicate acts constituting the "pattern of racketeering activity."

*United States v. Anderson*, 626 F.2d 1358, 1372 (8th Cir. 1980), *cert. denied*, 450 U.S. 912, 101

S.Ct. 1351, 67 L.Ed.2d 336 (1981); *United States v. Lemm*, 680 F.2d 1193, 1198 (8th Cir. 1982),

*cert. denied*, 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983).  By citing *United States v.*

*Kragness*, 830 F.2d 842, 855 (8th Cir. 1987), and *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765,

769 (8th Cir. 1992), Defendant Morrow is implicitly asking that the Court adopt this reading of

the requirements for a RICO conspiracy and use this standard as the proper springboard for its

analysis.

However, this standard is not the prevailing one recognized in the D.C. Circuit.  Rather,

the D.C. Circuit in *Perholtz* specifically rejected an argument similar to the one made by

Defendant Morrow, noting that

> [t]o the extent these courts have held that the enterprise is not *equivalent* to the
> pattern of racketeering, we are in accord.  The same group of individuals who
> repeatedly commit predicate offenses do not necessarily comprise an enterprise.
> An extra ingredient is required:  organization.  To the extent, however, these cases
> suggest that the organization cannot be inferred from the pattern (or even more,
> that the organization cannot exist unless it does something other than commit
> predicate acts), we cannot agree.

*Perholtz*, 842 F.2d at 363; *see also* O'Malley, Grenig & Lee, Federal Jury Practice and

Instructions, § 56.04 (5th ed. 2000) (notes) (pointing out that the Eighth Circuit takes "a sharply

divergent approach" to the issue of organization and structure).  As such, the D.C. Circuit has

found that "the government satisfies its burden if it proves the existence of the enterprise and of

the pattern," and has "refuse[d] to require the government to prove each by separate evidence."

*Id.* (citing numerous cases).

ii.    *The Government's Evidence*

By the close of the Government's case-in-chief, the Government introduced evidence

indicating that all Defendants had social ties independent of their joint criminal undertaking, as

-11-

testified to by the Government's witnesses Mr. Nourredine Chtaini, Mr. Omar Holmes, and Mr.

Antwon Perry.  The evidence introduced before the jury showed that the Defendants came

together as a coherent group by the Fall of 2003, first as drug dealers, then as car thieves and

robbers, and finally as bank robbers.  Over a nine month period, the Defendants engaged in

numerous acts that were racketeering acts, including offenses charged and uncharged.  In terms

of the charged racketeering acts, the evidence put before the jury highlighted the fact that

Defendant Morrow and Mr. Chtaini were involved in nearly every activity described; those two

individuals formed the core around which the larger group was built.  While the other members

of the group participated in fewer charged acts, they filled in as needed when they were available.

The evidence introduced by the Government also showed that the Defendants organized

themselves and created specific tasks for each participant in the various activities of the

enterprise.  Indeed, each participant played a specific role in the six bank robberies described

before the jury:  Defendant Morrow would usually go to the bank's vault, Mr. Chtaini would

engage the security guard and then go to the teller windows, and the other participant(s) would

act as crowd control, leaving one remaining individual to stay outside to provide security for the

effort.  The Government's evidence was sufficient to indicate that the Defendants had a common

purpose, organization, and a thread of continuity.  Importantly, the crimes were planned and

precise:  Defendants would acquire stolen vehicles, share common weapons and body armor,

play specific roles at each bank robbery, and then burn the vehicles during their get-away in order

to elude detection.  A reasonable jury could conclude, based on the Government's evidence, that

the Defendant's enterprise had a consistent structure, intrinsic hierarchy, and planned method of

operation sufficient to constitute a level of "organization" above and beyond that which was

simply required to commit each of the individual racketeering acts.

The enterprise containing Defendants was certainly loose and informal at times. However, numerous courts have concluded that the "organization" required for a RICO charge need not be a strictly structured unit.  *See, e.g.*, *United States v. Elliott*, 571 F.2d 880, 898 (5th Cir. 1978), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978) ("informal, *de facto*, organization" sufficient to constitute a RICO enterprise because the "enterprise" requirement is satisfied by "'any . . . group of individuals' whose association, however loose or informal, furnishes a vehicle for the commission of two or more predicate crimes" and where the "thread tying of all these . . . activities and individuals together was the desire to make money"); *United States v. Korando*, 29 F.3d 114, 1117-19 (7th Cir. 1994) (small arson-for-profit ring constituted RICO enterprise, albeit a "loose band of associates"), *cert. denied*, 513 U.S. 993, 115 S.Ct. 496, 130 L.Ed.2d 406 (1994); *United States v. Masters*, 924 F.2d 1362, 1366 (7th Cir. 1991) (recognizing that the group involved had no definable structure or organization, the circuit court still concluded that the "enterprise" requirement had been met because the individuals involved were able to "plan[] and carry[] out a detection-proof crime that would have been beyond the capacities of the individual defendants acting either singly or without the aid of their organizations").

The RICO conspiracy in this case did not necessarily contain a strict hierarchy among its members, and the individuals involved in the enterprise certainly varied during its duration, depending on their availability and presence within the jurisdiction.[6]  *But see United States v.*

---

[6] In addition to the fact that some Defendants were incarcerated or out of the jurisdiction for part of the enterprise time-frame, Mr. Chtaini also noted in his testimony that the later bank robberies produced dwindling returns for the group, necessitating a reduction in the number of

*Richardson*, 167 F.3d 621, 626 (D.C. Cir. 1999) ("The 'fortuitous interruption of [racketeering]

activity by an arrest' does not grant defendants a free pass to evade RICO charges.") (quoting

*United States v. Busacca*, 936 F.2d 232, 238 (6th Cir. 1991)).  However, the lack of a strict

hierarchy and the variation, at times, between the individuals involved in the nine-month-long

enterprise is insufficient to support a Rule 29(a) motion.  Rather, numerous courts, including the

D.C. Circuit, have found the existence of an enterprise when activity revolved around a core

group of personnel.  *See Perholtz*, 842 F.2d at 355 ("the existence of a continuing core of

personnel motivated by a common interest [was] sufficient to constitute the association-in-fact

enterprise"); *United States v. Errico*, 635 F.2d 152, 156 (2d Cir. 1980), *cert. denied*, 453 U.S.

911, 101 S.Ct. 3142, 69 L.Ed.2d 994 (1981) (although there was no apparent "structure" to the

enterprise other than the roles the individuals played, the government's evidence of a

"community of interest [in profiting from the fraud] and continuing core of personnel" was

sufficient to demonstrate an association-in-fact); *see also Richardson*, 167 F.3d at 625-26.

  In this case, the Government had adduced evidence showing that Mr. Chtaini and

Defendant Morrow constituted the inner core of the enterprise, with Defendants Stoddard,

Aguiar, Burwell, and Palmer representing the next level of association or membership, and

finally with Defendant Perkins and Mr. Holmes consisting of the final level of membership.  The

evidence presented in the Government's case-in-chief portrayed the enterprise as having (1)

several common purposes, as identified in the Indictment; (2) a basic organization wherein

certain members were given specific duties and allowed to share in the assets and weapons of the

enterprise; and (3) a level of continuity from inception to the enterprise's ultimate dissolution

––––––––––––––––––––––––

participants.

upon apprehension of the relevant members.  Moreover, the evidence presented by the Government indicated that the actions of Defendants were ultimately driven by the common motive of financial gain.  While both the evidence introduced and the pattern of activity reveals that the organization was somewhat loose and informal, the testimony provided in the Government's case-in-chief did show that Defendants and their co-conspirators consisted of an ongoing collective functioning as a continuing cooperative for criminal gain.  As such, the Court concludes that the Government has met its burden to survive Defendant Morrow's Rule 29(a) motion as to Count I of the Superseding Indictment, and shall allow the Defendants' case as to this Count to proceed before the jury.  The Court emphasizes that such a holding is consistent with controlling D.C. Circuit precedent and the practices of the majority of outside jurisdictions.

          2.      <u>The Two Assaults of Mr. Arrington</u>

In the alternative, Defendant Morrow attempts to advance the argument that the two assaults on Mr. Edwin Arrington -- on April 23, 2004 and May 15, 2004 -- fall outside of the scope of the RICO enterprise.  *See* Def. Morrow's Mot. for J. of Acquittal at ¶ 2, 1-2.  Defendant Morrow essentially argues that the evidence presented by the Government in its case-in-chief indicates that, at best, the motive for assaulting Mr. Arrington was "revenge" due to his alleged theft of "a gun that he had stolen."  *Id.*  Because "revenge" was the motive, the assault was extraneous to the RICO enterprise and did not further its goals in any way.

Importantly, the Superseding Indictment notes, in detail, the pattern and purposes of the alleged RICO enterprise.  In part, the Indictment focuses on "the purposes of the enterprise," which included:

(i) committing robberies, including bank robberies, in the District of Columbia, the District of Maryland and elsewhere for the purpose of obtaining money and other things of value; (ii) protecting members of the enterprise; (iii) maintaining in safe places the weapons, body armor, and money of the enterprise; and (iv) retaliating against persons who interfered with the operation of the enterprise, including the actual and perceived thefts of weapons by non-members of the enterprise.

Superseding Indictment, Count I (RICO Conspiracy).  In order to prove that an event introduced during testimony was related to the RICO enterprise, the Government must tie the event described to one of the purposes listed; if the event appears to indicate that purposes other than those listed led to its occurrence, then the Government cannot connect the event to the alleged RICO conspiracy.

During the Government's case-in-chief, testimony by Mr. Chtaini and Mr. Perry indicated that one of the shared, common weapons held by the enterprise had been given to Defendant Stoddard for use in a planned offense outside of the relevant Indictment.  However, before that weapon could be used, it was allegedly stolen by Mr. Arrington.  When Mr. Arrington did not return the weapon, the Government's evidence revealed that Defendants Morrow and Stoddard on one occasion, and Defendant Morrow, Mr. Chtaini, and an individual known as "K" on a second occasion, shot Mr. Arrington in retaliation for his perceived theft of the weapon belonging to the enterprise.  This incident clearly falls within Purpose (iv) listed in the Superseding Indictment:  "retaliating against persons who interfered with the operation of the enterprise, including the actual and perceived thefts of weapons by non-members of the enterprise." *See id.*

Given the inferences afforded the Government on a Rule 29(a) motion and the evidence presented, a reasonable jury could conclude that the assaults on Mr. Arrington met this goal of

the enterprise, and forwarded the other purposes described by protecting one of the assets of the collective -- its weaponry -- from diminution at the hands of outside actors. *See also* O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 56.08 (5th ed. 2000) (providing that the appropriate jury instructions reflect that the phrase "to conduct or participate, directly or indirectly, in the conduct of" the affairs of the enterprise means that the charged defendant participated in the performance of acts, functions, or duties which are necessary or helpful in the operation of the enterprise); *cf. United States v. Eufrasio*, 935 F.2d 553, 567 (3d Cir. 1991) (refusing to sever counts or defendants where one co-defendant's RICO liability was predicated on attempted extortion and a separate murder conspiracy that (1) did not involve his co-defendants and (2) of which his co-defendants were unaware because the criminal acts were undertaken "in furtherance of a single, commonly charged racketeering enterprise").  Because a reasonable jury could find, based on the evidence adduced during the Government's case-in-chief, that the assaults on Mr. Arrington furthered the purposes of the RICO enterprise and protected its ultimate existence, then Defendant Morrow's Motion for Judgment of Acquittal on this alternative argument must be denied.

        B.     *Defendant Perkins' Motion*

            1.     <u>Defendant Perkins' Position</u>

Defendant Perkins, in both his oral motion for judgment of acquittal and his supplemental written motion, focuses on the fact that the Government's evidence presented showed only that Defendant Perkins played a minor role in the conspiracies alleged and offenses charged. Defendant Perkins contends that the Government's case-in-chief revealed that he played -- at best -- a role in only one of the six bank robberies committed:  the final bank robbery at the SunTrust

Bank on June 29, 2004.  According to Defendant Perkins, the Government has failed to connect

him with any "assault with intent to kill, carjackings, shootings, management, driving of getaway

cars or stealing cars."  Def. Perkins' Suppl. Mot. for J. of Acquittal at 2.  Rather, Defendant

Perkins emphasizes that "the government's own witnesses have only assigned Mr. Perkins a <u>de</u>

<u>minimis</u> or 'Village Idiot' role in this entire conspiracy." *Id.* (noting that "Mr. Chitani [sic]

referred to Mr. Perkins as acting like a 'little kid jumping around'").

Given the evidence presented by the Government, Defendant Perkins asserts that the

evidence presented by the Government can only connect him with a "single criminal episode,"

i.e., the sixth and final bank robbery -- "There is no evidence in the record to expand or cure the

fatal flaw in any government argument that Mr. Perkins has more than one criminal act in this

entire saga." *Id.* at 2-3.  According to Defendant Perkins, this failure of the Government to

expand Defendant Perkins' involvement beyond a single criminal episode is fatal to Count I of

the Indictment because (1) the Government must establish two predicate acts in order to prove

the kind of "pattern of racketeering activity" necessary to establish a RICO violation, *id.* at 1-2

(citing *Efron*, 223 F.3d at 15; *Sedima*, 473 U.S. at 496 n.14, 105 S.Ct. 3275; *Apparel Art Int'l*,

967 F.2d at 722; *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106

L.Ed.2d 195 (1989)), and (2) the evidence at best only connects Defendant Perkins with

"sporadic activity," insufficient to prove the "continuity" requirement inherent in RICO, *id.* at 3-

4 (citing *Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 105-06 (1st Cir. 2002); *Fleet Credit Corp. v.*

*Sion*, 893 F.2d 441, 447 (1st Cir. 1990); *Kenda Corp. v. Pot O'Gold Money Leagues Inc.*, 329

F.3d 216, 233 (1st Cir. 2003)).

2.      The Court's Review of the Evidence vis-á-vis Defendant Perkins

By the close of the Government's case-in-chief, the Government had introduced evidence

connecting Defendant Perkins to the alleged RICO conspiracy in a variety of ways.  First, the

Government, through testimony provided by Mr. Chtaini, adduced evidence showing that

Defendant Perkins had long interacted with Defendant Morrow and Mr. Chtaini, and that his

apartment was familiar to both individuals.  Second, the Government, once again through Mr.

Chtaini, introduced testimony showing that following the fifth bank robbery, the June 12, 2004

robbery of the Industrial Bank located at 2012 Rhode Island Avenue, N.E., Washington, D.C.,

the alleged perpetrators -- Defendants Morrow, Stoddard, Aguiar, and Burwell, along with Mr.

Chtaini -- went to Defendant Perkins' apartment located in the 2600 block of Brinkley Road, in

Fort Washington, Maryland.  At Defendant Perkins' apartment, the alleged perpetrators divided

up the $30,000 stolen from the bank, and then -- per Defendant Perkins' agreement -- stashed

their weapons, body armor, clothing, and disguises at his apartment for future use.

Third, the Government, through both testimony and a variety of physical evidence,

connected Defendant Perkins to the July 29, 2004 robbery of the SunTrust Bank located at 5000

Connecticut Avenue, N.W., in Washington, D.C.  The evidence introduced at trial revealed that

Defendant Perkins, spurred on by his viewing of the Industrial Bank proceeds, participated in the

robbery by acting as a lookout, armed with a fully automatic AK-47 assault weapon, as

Defendant Morrow and Mr. Chtaini robbed the bank's tellers at gunpoint.  Fourth, once again

through testimony and physical evidence, the Government adduced evidence showing that

Defendants Perkins and Morrow, along with Mr. Chtaini, hid their weapons, proceeds, body

armor, and disguises in two locations -- including Defendant Perkins' Brinkley Road apartment --

-19-

for use in possible future robberies.  Evidence then indicated that Defendants Morrow and

Perkins, along with Mr. Chtaini, used some of the SunTrust Bank proceeds to acquire cell phones

to aid any future activity.  As Mr. Chtaini testified, "He [Defendant Perkins] wanted to be

involved in as many robberies as we were planning . . . . Because he wanted to be down.  He

wanted to get money with the rest of us."  *See* 5/4/05 Tr. at 3407; *see also id.* at 3406 (Chtaini

testified that the conspirators were not planning for the SunTrust Bank to be their last robbery).

Possible future offenses were then stymied by the apprehension of Mr. Chtaini, which then led to

the arrest of Defendant Perkins, the ensuing search of Defendant Perkins' Brinkley Road

residence, and the collection of certain items of evidence from Defendant Perkins' apartment

connecting him, either directly or indirectly, to the bank robberies -- including the discovery of

weapons, jackets, bandannas, and a vault.

### 3.    The Fatal Flaws With Defendant Perkins' Assertions

The central problem with Defendant Perkins' analysis, and the cases underpinning his

argument, is that he misconstrues the actual offense charged.  The stringent requirements cited in

the civil RICO cases provided by Defendant Perkins relate to substantive RICO offenses charged

under 18 U.S.C. § 1962(c).  *See Sedima*, 473 U.S. at 496, 105 S.Ct. 3275 (discussing the

requirements for establishing a Section 1962(c) violation); *Apparel Art Int'l*, 967 F.2d at 721

(noting that the complaint alleged a violation of 18 U.S.C. § 1962(c)); *Efron*, 223 F.3d at 14-15

(citing to the fact that a plaintiff must show "two predicate acts" and a "pattern" "[t]o state a

RICO claim under section 1962(c)").  However, Defendant Perkins is not charged in the

Superseding Indictment with a violation of 18 U.S.C. § 1962(c); rather, Count I of the

Superseding Indictment charges Defendant Perkins, along with his six co-defendants, with

-20-

Conspiracy to Participate in a Racketeer Influenced Corrupt Organization, in violation of 18

U.S.C. § 1962(d).  *See* Superseding Indictment (Count I).

Importantly, the requirements for a prima facie showing of a RICO *conspiracy* under

Section 1962(d) are much less demanding than the elements necessary to establish a substantive

RICO violation under Section 1962(c).  First, the "operation or management of the enterprise"

prong necessary to establish a substantive RICO offense, *see Reves v. Ernst & Young*, 507 U.S.

170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), applies only to offenses under Section

1962(c); in contrast, numerous courts have held that a defendant can be charged under Section

1962(d) even if he cannot be characterized as an operator or manager of a RICO enterprise.  *See,*

*e.g.*, *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 731 (7th Cir. 1998) (citing *MCM Partners,*

*Inc. v. Andrews-Bartlett & Assocs.*, 62 F.3d 967, 979 (7th Cir. 1995); *United States v.*

*Quintanilla*, 2 F.3d 1469, 1484-85 (7th Cir. 1993)); *United States v. Phillip Morris USA, Inc.*,

327 F. Supp. 2d 13, 19-20 (D.D.C. 2004) (citing *Smith v. Berg*, 247 F.3d 532, 537 (3d Cir. 2001);

*United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998), *cert. denied*, 526 U.S. 1031,

119 S.Ct. 1280, 143 L.Ed.2d 373 (1999); *Napoli v. United States*, 45 F.3d 680, 683-84 (2d Cir.

1995)).  As such, despite the fact that Defendant Perkins seeks to label himself the "'Village

Idiot' in this entire conspiracy," Def. Perkins' Suppl. Mot. for J. of Acquittal at 2, who played

only a *de minimis* role in the grand scheme rather than the role of a manager, he still may be

found liable under Section 1962(d).

Second, Defendant Perkins' argument, which would require the Government to prove that

the defendant personally agreed to commit two predicate acts, was specifically rejected by the

United States Supreme Court in *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139

L.Ed.2d 352 (1997).  Instead, the *Salinas* Court held that Section 1962(d) is governed by

traditional conspiracy law; as such, (1) an individual can be convicted of a Section 1962(d)

conspiracy offense even if he "does not agree to commit or facilitate each and every part of the

substantive offense"; (2) an individual who agrees with others to pursue a shared criminal

objective may be liable for the acts of the other conspirators; (3) such an individual may be held

liable for the conspiracy even if he does not perpetuate the crime himself but does provide

support to those who do; and (4) an individual may be held liable for a conspiracy "even though

he was incapable of committing the substantive offense." *Id.* at 63-64, 118 S.Ct. 469; *see also*

*Goren*, 156 F.3d at 731.  As such, to be convicted of a Section 1962(d) offense, a conspirator

such as Defendant Perkins

> must intend to further an endeavor which, if completed, would satisfy all of the
> elements of a substantive criminal offense, but it suffices that he adopted the goal
> of furthering or facilitating the criminal endeavor.  He may do so in any number of
> ways short of agreeing to undertake all of the acts necessary for the crime's
> completion.  One can be a conspirator by agreeing to facilitate only some of the
> acts leading to the substantive offense.  It is elementary that a conspiracy may
> exist and be punished whether or not the substantive crime ensues, for the
> conspiracy is a distinct evil, dangerous to the public, and so punishable in itself.

*Id.* at 65, 118 S.Ct. 469 (citing *Callanan v. United States*, 364 U.S. 587, 594, 81 S.Ct. 321, 5

L.Ed.2d 312 (1961)).

Based upon the *Salinas* decision, in order to prove a RICO conspiracy in violation of

Section 1962(d), the Government need only establish that:  (1) that two or more people agreed to

commit a substantive RICO offense, and (2) that the defendant knew of and agreed to the overall

objective of the RICO offense.  *See Posada-Rios*, 158 F.3d at 857 (recognizing import of *Salinas*,

522 U.S. at 64-66); *Brouwer v. Raffensperger Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000)

-22-

(same); *Phillip Morris*, 327 F. Supp. 2d at 19 (same); *United States v. Phillip Morris Inc.*, 130 F.

Supp. 2d 96, 100 (D.D.C. 2001).  Based on this test, liability under Section 1962(d) may arise

"even where a defendant joined the conspiracy after it began, did not participate in all acts of the

conspiracy, and where acts in furtherance of the conspiracy took place prior to and after the

defendant joined the conspiracy."  *United States v. Edelin*, 128 F. Supp. 2d 23, 37 (D.D.C. 2001)

(citing *Salinas*, 522 U.S. at 63, 118 S.Ct. 469; *United States v. Bridgeman*, 523 F.2d 1099, 1108

(D.C. Cir.1975), *cert. denied*, 425 U.S. 961, 96 S.Ct. 1743, 48 L.Ed.2d 206 (1976)).

        The Court concludes that the evidence presented against Defendant Perkins, and against

his co-defendants, is certainly sufficient to meet this test and survive a motion for judgment of

acquittal under Rule 29(a).  The Government's evidence indicates that Defendant Perkins

certainly agreed to at least two of the listed purposes of the racketeering enterprise:  "(i)

committing robberies, including bank robberies, in the District of Columbia, the District of

Maryland, and elsewhere for the purposes of obtaining money and other things of value," and

"(iii) maintaining in safe places the weapons, body armor, and money of the enterprise."  *See*

Superseding Indictment (Count I) ¶ 7.  The evidence adduced in the Government's case-in-chief

connected Defendant Perkins (1) to the cover-up of the fifth bank robbery alleged, the Industrial

Bank robbery, (2) to actual participation in the sixth bank robbery alleged, the SunTrust Bank

robbery, and (3) to the cover-up of the SunTrust Bank robbery, wherein the materials of the

enterprise -- including the weapons, jackets, and disguises -- were left in his apartment to enable

possible future crimes because "[h]e wanted to be involved in as many robberies as they [the

conspirators] were planning."  *See* 5/4/05 Tr. at 3407 (testimony of Mr. Chtaini).  Given the

evidence illuminating his alleged actions, the Government has provided sufficient evidence for a

-23-

reasonable juror to conclude that Defendant Perkins, motivated by a desire for easy money, knew of and furthered the objectives of the pre-existing RICO enterprise.

Moreover, as indicated previously, *supra* Section I(A), the Government has provided sufficient evidence for a reasonable juror to find that "two or more people agreed to commit a substantive RICO offense" and that a RICO enterprise was well underway by the time Defendant Perkins became aware of its activities and agreed to join as a co-conspirator in furtherance of the enterprise's objectives. The Government's evidence presented reveals that by the time of Defendant Perkins' initial involvement with the enterprise on the afternoon of June 12, 2004, the RICO enterprise, through its members, had already attempted to rob an armored car containing bank proceeds, committed two different assaults with intent to kill in order to protect the assets of the enterprise, robbed five separate banks, and had participated in a host of other, uncharged conduct over the course of six months.

These multiple predicate offenses and racketeering acts were not mere "sporadic crime"; rather, these organized activities, stretched over many months, certainly included "a specific threat of repetition extending indefinitely into the future," *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893. As such, by the time of Defendant Perkins' roughly one-month-long involvement in the enterprise, before its dissolution upon the timely apprehension of its members, the enterprise had already established the continuity necessary to constitute a RICO conspiracy. While Defendant Perkins' alleged participation was certainly less than Defendant Morrow's alleged participation, for instance, such a gap in activity is not relevant for a Section 1962(d) offense. Rather, it is clear that a Section 1962(d) RICO conspiracy was already underway when Defendant Perkins agreed to the enterprise's objectives and began his participation, intending to continue in it if he

and the other co-conspirators had not been apprehended.  At that point, under the doctrine

elucidated by the Supreme Court in *Salinas*, liability attached to Defendant Perkins under 18

U.S.C. § 1962(d).  As such, given the evidence presented by the Government in its case-in-chief,

and the relevant case law regarding the Government's burdens under Section 1962(d), the Court

shall deny Defendant Perkins' Motion for Judgement of Acquittal as to Count I under Rule 29(a).

## IV:  CONCLUSION

For the reasons set forth above, Defendant Morrow's Motion for Judgment of Acquittal

as to Count I of the Superseding Indictment and Defendant Perkins' Motion for Judgment of

Acquittal as to Count I of the Superseding Indictment are both DENIED.  The Court also

reaffirms its oral ruling of June 10, 2005, which DENIED the brief Rule 29(a) motions made by

all Defendants as to all other counts of the Superseding Indictment, as modified by the Court's

Memorandum Opinion and Order of March 25, 2005.  *See United States v. Morrow*, Crim. No.

04-355, at 20-23 (D.D.C. Mar. 25, 2005) (memorandum opinion striking some language relating

to the assaults with intent to kill from Count II of the Superseding Indictment).  An Order

accompanies this Memorandum Opinion.


Date:   June 13, 2005


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge