UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Nos.  04-355-05 (CKK) |
| | : | |
| v. | : | |
| | : | |
| BRYAN BURWELL, | : | |
|     also known as "Bush," | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits in the above-referenced matter this memorandum in aid of sentencing of defendant Bryan Burwell. The United States recommends, as is discussed below, that the defendant be sentenced to a significant term or incarceration, followed by a consecutive mandatory term of thirty years, supervised release and restitution.

**I. FACTUAL BACKGROUND**

A. <u>Charges and Counts of Conviction Against Defendant Burwell</u>[1]

On February 15, 2005, the Grand Jury in the case under the above-referenced case number returned a twenty count Indictment against the six remaining defendants[2] in this case – Miquel Morrow, Lionel Stoddard, Carlos Aguiar, Bryan Burwell, Aaron Perkins, and Malvin Palmer (collectively, "Defendants"). Count I of the Indictment charged all six Defendants with a conspiracy

---

[1] This discussion is taken nearly verbatim from the Court's Memorandum Opinion denying the defendants' new trial motions. The discussion set forth in the text of this memorandum is found under the heading "I: BACKGROUND *A. The Relevant Charges*." <u>United States</u> v. <u>Morrow</u>, ___ F.Supp.2d ___, 2006 WL 241231, at pages 3-4 (D.D.C. Feb. 1, 2006).

[2] Messrs. Nourredine Chtaini, Omar Holmes, and Guidel Olivares were also associated with the Defendants as part of the relevant conspiracies, but pleaded guilty and therefore were not defendants in this trial.

to participate in a Racketeer Influenced Corrupt Organization ("RICO"), in violation of 18 U.S.C. § 1962(d), based upon alleged racketeering acts involving armed robberies of four banks in the District of Columbia (Acts 1-4) and two banks in the District of Maryland (Acts 5-6), as well as three acts involving murder (Acts 7-9).  Count II charged all six Defendants with a conspiracy to commit offenses against the United States, in violation of 18 U.S.C. § 371, by "unlawfully and knowingly" combining, conspiring, confederating, and agreeing "to assault and put in jeopardy the life of persons by the use of dangerous weapon[s] in the commission of the offense of bank robbery, in that they would, while armed with firearms, by force and violence, against resistance and by putting in fear, steal and take from persons and from the immediate actual possession of persons, property of value, that is, money belonging to, and in the care, custody, control, management, and possession of banks, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18 United States Code, Sections 2113(a) and (d)."

Substantive charges in the Indictment relevant to defendant Burwell included armed bank robbery (Count X) in violation of 18 U.S.C. §§ 2113(a), (d) and 18 U.S.C. § 2; and using and carrying a firearm - a machinegun - during a crime of violence (Count XI) in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii), (B)(i)-(ii), and 18 U.S.C. § 2.  The armed bank robberies - both the substantive count and Racketeering Acts III and VI - were allegedly accomplished while the Defendants brandished weapons and wore body armor, hoods, masks, bandanas, and heavy clothing to avoid identification.

On July 15, 2005, after a trial of over three months, the jury in this case returned with its verdict as to all Defendants.  Defendant Burwell was convicted of all counts for which he was

charged – Counts I, II, X, and XI. *See* Burwell Verdict Form at 1-3.[3]

    B. <u>Evidence at Trial Against Defendant Burwell</u>[4]

By the close of the government's case-in-chief, the government introduced evidence indicating that all Defendants had social ties independent of their joint criminal undertaking, as testified to by the government's witnesses, Mr. Nourredine Chtaini, Mr. Omar Holmes, and Mr. Antwon Perry. The evidence introduced before the jury showed that the Defendants came together as a coherent group by the Fall of 2003, first as drug dealers, then as car thieves and robbers, and finally as bank robbers. Over a nine month period, the Defendants engaged in numerous acts that were racketeering acts, including offenses charged and uncharged.

The evidence introduced by the government also showed that the Defendants organized themselves and created specific tasks for each participant in the various activities of the enterprise. Indeed, each participant played a specific role in the six bank robberies described before the jury: Defendant Morrow would usually go to the bank's vault, Mr. Chtaini would engage the security guard and then go to the teller windows, and the other participant(s) would act as crowd control, leaving one remaining individual to stay outside to provide security for the effort. The crimes were planned and precise: Defendants would acquire stolen vehicles, share common weapons and body armor, play specific roles at each bank robbery, and then burn the vehicles during their get-away in

---

[3] The jury made specific findings that the firearm used in the 924(c) count was: 1) used or carried; 2) possessed; 3) brandished; 4) a semiautomatic assault weapon; and 5) a machinegun. *Id.*, at pages 2-3.

[4] The discussion in the first three paragraphs below is taken nearly verbatim from the Court's Memorandum Opinion denying the defendants' motions for judgment of acquittal. The discussion set forth in the text of this memorandum is found under the heading "ii. *The Government's Evidence*." <u>United States</u> v. <u>Morrow</u>, 2005 WL 1389256, at pages 5-7 (D.D.C. June 13, 2005) (slip copy).

order to elude detection.

In this case, the government had adduced evidence showing that Mr. Chtaini and defendant Morrow constituted the inner core of the enterprise, with defendants Stoddard, Aguiar, Burwell, and Palmer representing the next level of association or membership, and finally with defendant Perkins and Mr. Holmes constituting the final level of membership.

Specifically, as stated above, defendant Burwell participated in two of the bank robberies, that is, the robberies at the Chevy Chase Bank at Riggs Plaza in Chillum, Maryland, on May 27, 2004, and Industrial Bank on June 12, 2004. In both robberies defendant Burwell went inside the bank with an assault weapon and acted as "crowd control." Presentence Investigation Report ("PSR"), at page 7, ¶ 21; and page 8, ¶ 26; Trial Transcript (hereinafter "TR"), 5/4/05, at page 3361. Most memorably, it was defendant Burwell who hit Chevy Chase Bank employee Joseph Kamara in the head with the butt of defendant Burwell's rifle and knocked him down. TR, 5/4/05, at page 3363 (testimony of Mr. Chtaini). Mr. Chtaini testified that defendant Burwell "smacked [Kamara] with the back of his gun in the . . . the back of the man's neck" and that defendant Burwell "said that he struck him because [Kamara] was smiling." *Id.*

As to the other criminal activity of defendant Burwell, he, defendant Morrow, Mr. Chtaini, Mr. Holmes, and an individual known as "KB", committed an armed carjacking of a BMW on Georgia Avenue, N.W., in November of 2003. TR, 5/23/05, at pp. 5197-211.

## II. DEFENDANT'S CRIMINAL RECORD

Defendant Burwell has prior convictions for Simple Assault (1999) and Possession of Marijuana (2005). PSR, at pages 13-14, ¶¶ 75-76. He also has arrests, without conviction, for Possession with Intent to Distribute Marijuana, Possession of Cocaine, and other offenses against

the public order.  *Id.*, at page 14, ¶¶ 79-82.  As a result, defendant Burwell has a Criminal History category of II.  *Id.*, ¶ 78.

### III. UNITED STATES SENTENCING GUIDELINES ("USSG")

A. <u>The Adjusted Offense Level</u>:  The government believes that the total offense level is 30:

1) <u>Racketeering Act 6</u> (the May 27, 2004, armed robbery of the Chevy Chase Bank in Chillum, Maryland, inside which defendant Burwell hit employee Kamara in the head with his rifle) is the more serious act, and the adjusted offense level is 29, as follows:

| | |
|---|---|
| Base Offense Level (§2 B3.1(a)) | 20 |
| Financial Institution (§2 B3.1(b)(1)) | +2 |
| Firearm "otherwise used" (§2 B3.1(b)(2)(A)) | +6[5] |
| Loss greater than $10,000 (§2 B3.1(b)(7)(C)) | +1 |

2) <u>Racketeering Act 3</u> (the June 12, 2004, armed robbery of Industrial Bank) is scored lower, at level 23, because no weapons enhancement is applied, due to the imposition of a mandatory minimum sentence, under 18 U.S.C. § 924(c):

| | |
|---|---|
| Base Offense level (§ 2B3.1(a)) | 20 |
| Financial Institution (§ 2B3.1(b)(1)) | +2 |
| Loss greater than $10,000 (§ 2B3.1(b)(7)(C)) | +1 |

3)  The effect of the Multiple Count Adjustment under USSG §3D1.5, therefore, is an additional one level above the most serious incident, for a total Adjusted Offense Level of 30.

For an Adjusted Offense Level of 30, and a Criminal History category of II, the resulting sentencing range for the counts, other than the 18 U.S.C. § 924(c) count, is 108 to 135 months.

---

[5]  The calculation for this offense is different than that shown in the PSR because this six-level adjustment was not included in the PSR calculations.  *See* PSR, at pages 11-12, ¶¶ 56-62.

B. <u>Mandatory Sentence for § 924(c) Count</u>

The § 924(c) count results in a mandatory sentence of 30 years for count XI (360 months). PSR, at page 12, ¶ 73.

C. <u>Total Sentence</u>

When the mandatory time for the § 924(c) count (360 months) is added to the Adjusted Offense Level for the other counts (108 to 135 months), the result is a total sentencing range of 468 to 495 months.

## IV. **DEFENDANT'S OBJECTIONS TO THE PSR**

In the PSR, there are noted several unresolved objections by the defendant to that report. PSR, at page 22-23. First, the PSR notes that defendant maintains his innocence to all charges. Clearly, the jury rejected this assertion and the contention shows defendant's failure to accept responsibility for his actions. Second, defendant contends that the third line of paragraph 27, page 8, of the PSR should read "involving attempted murder . . ." The Probation Officer correctly notes that the language used in the PSR is as in the charging document, for which the jury found defendant guilty. Third, defendant objects to the listing of prior arrests not resulting in conviction. As the Probation Officer notes, this information is correctly listed in the PSR. Finally, defense counsel notes an issue on defendant's part regarding illegal drugs. The Probation Officer "noted for the record" defense counsel's comment.

## IV. **RECOMMENDATION**

Among the other crimes of this criminal organization, defendant Burwell participated in two of the bank robberies, during which robberies he acted in the role of "crowd control." *See* Tr, 5/4/05, at page 3361. In the first bank robbery in which he participated, defendant brought a level of

6

violence to the robberies not previously seen in the series. Previously, the bank employees and customers were terrorized and menaced, but never physically assaulted or injured. It was defendant Burwell who escalated the violence by beating Chevy Chase Bank employee Joseph Kamara to the ground by hitting him in the head with the butt of his rifle. Defendant Burwell's explanation for striking Kamara was "because he was smiling." *Id.*, at 3363. Furthermore, prior to the robberies, defendant Burwell had been involved in the carjacking of the BMW on Georgia Avenue, and he had prior criminal involvement in illegal drug activity.

The victims of the crimes charged against defendant here were the innocent bank employees and customers in the bank, including Mr. Kamara, as well as the pedestrians and motorists in the District of Columbia and Maryland who were present during the crimes. Defendant, by his actions, helped create significant chaos, terror and disruption to the public order. Now, defendant must be held responsible for his actions and the Court's sentence will do that.

The government, accordingly, requests that the Court sentence the defendant to a significant term within the range set by the sentencing guidelines (108 to 135 months); followed by a

consecutive mandatory term of incarceration of 360 months; maximum terms of supervised release; and restitution of $361,000.  *See* PSR, at page 21, ¶ 138 (restitution).

Respectfully Submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar Number 451058

By:      / s /
    BARBARA E. KITTAY
    D.C. Bar #414216
    DANIEL P. BUTLER
    D.C. Bar #417718
    Assistant U.S. Attorneys
    555 4th Street, N.W.
    Washington, D.C. 20530
    (202) 514-6940, (202) 353-9431
    Barbara.Kittay@usdoj.gov
    Daniel.Butler@usdoj.gov