## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

     v.

LIONEL STODDARD,

   Defendant.

**Criminal No. 04cr355-02 (CKK)**
**(Civil Action No. 12-1322)**

## MEMORANDUM OPINION
(November 24, 2014)

On July 15, 2005, Lionel Stoddard ("Stoddard") was convicted by a jury in this Court of: conspiracy to conduct and participate, directly and indirectly, in the affairs of an enterprise, through a pattern of racketeering activity ("Count I"), including the armed robbery of the Industrial Bank located at 2012 Rhode Island Avenue, N.E., Washington, D.C., on or about June 12, 2004 ("Racketeering Act 3"), the armed robbery of the Chevy Chase Bank located at 3601 St. Barnabas Road, Silver Hill, Maryland, on or about May 10, 2004 ("Racketeering Act 5"), assault with intent to kill while armed of Edwin Arrington on or about April 23, 2004 ("Racketeering Act 7"), and assault with intent to kill while armed of Police Officer Katie Collins on or about May 10, 2004 ("Racketeering Act 8"); conspiracy to commit offenses against the United States, that is, armed robberies of banks the deposits of which were then insured by the Federal Deposit Insurance Corporation ("Count II"); armed robbery of the Industrial Bank on or about June 12, 2004 ("Count X"); using and carrying a firearm during and in relation to a crime of violence on or about June 12, 2004 ("Count XI"); and unlawful possession of a firearm on or about June 12, 2004, by a person convicted of a crime punishable by imprisonment for a term exceeding one year ("Count XIV"). The jury also found Stoddard not guilty of assault with

intent to kill while armed of Edwin Arrington on or about April 23, 2004 ("Count XVIII"). Presently before the Court is Stoddard's *pro se* [773] Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.  Upon a searching review of the parties' submissions,[1] the relevant authorities, and the record as a whole, the Court finds no grounds for setting aside Stoddard's conviction and sentence.   Accordingly, the Court shall DENY Stoddard's [773] Motion to Vacate, Set Aside, or Correct Sentence.

## I. BACKGROUND

On August 3, 2004, a federal grand jury indicted Stoddard and six codefendants in connection with a string of bank robberies that occurred in the District of Columbia and Maryland.[2]  Indictment, ECF No. [10].  The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") described the factual scenario:

> [Stoddard and his codefendants] indulged in a violent crime spree throughout the District of Columbia metro area that lasted for nearly a year and a half. Appellants, who began by cultivating and selling marijuana, evolved into a ring that committed armed bank robberies, using stolen vehicles to travel to the targeted banks and make their escapes. By the summer of 2004, the robbers had developed a signature style. The gang wore bullet-proof vests, masks, and gloves, and relied on superior fire power, preferring to use military weapons like AK-47s instead of handguns because they surmised the metropolitan police "wouldn't respond" when Appellants "robb[ed] banks with assault weapons." The gang made use of several stolen vehicles, strategically placed along the get-away-route, for each robbery. The robbers would serially abandon the vehicles, often torching them in an attempt to destroy any forensic evidence that might be left behind.

*United States v. Burwell*, 642 F.3d 1062, 1064-65 (D.C. Cir. 2011) (internal citations omitted).

---

[1] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents: Def.'s Mot. to Vacate Sentence ("Def.'s Mot."), ECF No. [773]; Govt.'s Opp'n to Def.'s Mot. to Vacate Sentence ("Govt.'s Opp'n"), ECF No. [794]; Def.'s Response to Govt.'s Opp'n to Mot. ("Def.'s Response"), ECF No. [819].

[2] A seventh codefendant later was added by virtue of a superseding indictment. Superseding Indictment, ECF No. [19].

The matter proceeded to trial in this Court, and Stoddard was tried alongside five other codefendants.  On July 15, 2005, a jury convicted Stoddard on five counts upon which he was charged in the indictment; the jury found Stoddard not guilty of a sixth count, Count XVIII. Verdict Form, ECF No. [472].

On May 19, 2006, this Court sentenced Stoddard to 365 months on Count I, 60 months on Count II, 300 months on Count X, and 120 months on Count XIV to run concurrently to each other.  The Court also sentenced to Stoddard to 360 months of imprisonment on Count XI to run consecutive to all counts. Judgment in a Criminal Case, ECF No. [639].  Stoddard filed a timely appeal of his conviction and on April 29, 2011, the D.C. Circuit affirmed Stoddard's conviction in a published opinion.  *United States v. Burwell*, 642 F.3d 1062 (D.C. Cir. 2011), *aff'd in part en banc*, 690 F.3d 500 (D.C. Cir. 2012).  Stoddard did not file a petition for writ of certiorari with the Supreme Court of the United States.  Stoddard currently is serving his sentence.

Pending before the Court is Stoddard's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.  Stoddard's motion is premised on ineffective assistance of counsel claims related to his trial and appellate counsel, W. Gregory Spencer.  Specifically, Stoddard claims that his counsel rendered him ineffective assistance of counsel by: (1) failing to challenge the violation of his statutory and constitutional right to speedy trial; (2) failing to raise double jeopardy challenges to the indictment prior to trial and failing to move to dismiss based on this challenge, and for failing to raise this issue on appeal; (3) failing to raise a Confrontation Clause challenge to certain evidence; and (4) failing to request an informant jury instruction at trial.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal.  "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Nonetheless, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).

A prisoner may not raise a claim as part of a collateral attack if that claim could have been raised on direct appeal, unless he can demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted.  *Bousley v. United States*, 523 U.S. 614, 622 (1998).  However, "[w]here a petitioner raises claims of ineffective assistance of counsel in a § 2255 motion, he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these claims may properly be raised for the first time in a § 2255 motion."  *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000), *aff'd*, 22 F. App'x 3 (D.C. Cir. 2001) (citation omitted).

A defendant claiming ineffective assistance of counsel must show (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [him] prejudice." *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citation omitted). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). It is the petitioner's burden to show that counsel's errors were "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment. *Harrington v. Richter*, 562 U.S. 86, --, 131 S. Ct. 770, 787 (2011). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions . . . . [I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of . . . counsel's other litigation decisions." *Strickland*, 466 U.S. at 691. In evaluating ineffective assistance of counsel claims, the Court must give consideration to "counsel's overall performance," *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986), and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689. Moreover, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id*.

### III. DISCUSSION

A district court may deny a Section 2255 motion without a hearing when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28

U.S.C. § 2255(b).  "'The decision whether to hold a hearing is committed to the district court's discretion, particularly when, as here, the judge who is considering the § 2255 motion also presided over the proceeding in which the petitioner claims to have been prejudiced.'"  *United States v. Orleans-Lindsey*, 572 F. Supp. 2d 144, 166 (D.D.C. 2008), *appeal dismissed*, No. 08-3089, 2009 U.S. App. LEXIS 20833 (D.C. Cir. Sept. 18, 2009) (quoting *Fears v. United States*, No. Civ. A. 06-0086 (JDB), 2006 WL 763080, at *2 (D.D.C. Mar. 24, 2006) (citations omitted)); *see also United States v. Agramonte*, 366 F. Supp. 2d 83, 85 (D.D.C. 2005), *aff'd*, 304 Fed. App'x 877 (D.C. Cir. 2008).  "The judge's own recollection of the events at issue may enable him summarily to deny a Section 2255 motion." *Agramonte*, 366 F. Supp. 2d at 85 (citing *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 915 (1992)).  To warrant a hearing, the petitioner's Section 2255 motion must "raise[] 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection.'" *Pollard*, 959 F.2d at 1031 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

Based on a thorough review of the parties' pleadings and the entire record in the criminal proceeding, the Court finds that there is no need for an evidentiary hearing on the instant motion. As explained below, Stoddard has not proffered detailed and factual allegations outside of the record such that a hearing is required on the issues raised in his motion.  Accordingly, the Court shall render its findings based on the parties' pleadings and the record.

Stoddard raises four ineffective assistance of counsel claims related to counsel allegedly: (1) failing to challenge the violation of his statutory and constitutional right to speedy trial; (2) failing to raise double jeopardy challenges to the indictment prior to trial and failing to move to

dismiss based on this challenge, and for failing to raise this issue on appeal; (3) failing to raise a Confrontation Clause challenge to certain evidence; and (4) failing to request an informant jury instruction at trial.  The Court shall address each claim in turn.

### A.  *Speedy Trial Challenge*

A defendant's speedy trial rights are protected statutorily under the Speedy Trial Act as well as constitutionally under the Sixth Amendment.  Stoddard alleges that his trial counsel was ineffective by failing to move to dismiss the indictment in the instant action based on a violation of the Speedy Trial Act and for consenting to a continuance of his statutory right to a speedy trial. Stoddard also alleges that his counsel was deficient in failing to challenge the indictment based on a violation of constitutional speedy trial rights.  Def.'s Response at 1-7.  The Court shall address Stoddard's ineffective assistance of counsel claim as it relates to both the statutory and constitutional protection.

Pursuant to 18 U.S.C. § 3161(c)(1), a trial for a defendant who has pled not guilty must commence within 70 days from the filing and making public of the indictment, or from the date that the defendant appeared before a judicial officer in which the charge is pending, whichever is later.  In a case involving multiple defendants, the speedy trial clock resets upon the initial appearance of a new defendant.  *United States v. Van Smith*, 530 F.3d 967, 969-70 (D.C. Cir. 2008).  In other words, all codefendants share the speedy trial computation of the latest codefendant.  *Id.* (quoting *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986)).  However, pursuant to section 3161(h), there are several scenarios under which the Court may toll this 70-day time period.

In the instant action, Stoddard was indicted pursuant to a sealed indictment on August 3,

2004, and arraigned on August 9, 2004. Marvin Palmer was the last of Stoddard's codefendants to be arrested and arraigned. Palmer's arrest and arraignment occurred on August 25, 2004. Accordingly, August 25, 2004 is the operative date under the Speedy Trial Act for calculating the 70-day period for all codefendants in this matter, *see Van Smith*, 530 F.3d at 969-70, and Stoddard's trial commenced on April 5, 2005, 223 days from this date.

However, on September 27, 2004, 33 days from August 25, 2004, the Court held a status hearing with Stoddard and seven of his codefendants present, to discuss the Government's Notice to the Court of Plan, in Consultation with Defense Counsel, for Future Actions in this Case. *See* Notice to the Court of Plan, ECF No. [90]. At the hearing, Stoddard's counsel, along with counsel for the codefendants and in the presence of Stoddard, was asked whether defense counsel objected to complex case designation under the Speedy Trial Act and whether defense counsel had an opportunity to talk to his client about this designation. Tr. 6:13—7:13; 7:20—8:2 (Sept. 27, 2004), ECF No. [675]. Stoddard's counsel did not indicate that he had been unable to speak with his client about the designation of the case as complex, nor did he raise an objection to designating the case as complex within the meaning of the Act. *Id.*

Following the hearing on October 4, 2004, 40 days from the operative Speedy Trial Act date, the Court entered a written order tolling the time period under the Act pursuant to 18 U.S.C. §§ 3161(h)(8)(A), (B)(i), (B)(ii) & B(iv) (2004). Order (Oct. 4, 2004), ECF No. [92]. Specifically, the Court cited the nature of the case (eight codefendants and an alleged conspiracy to rob six separate banks on six different dates), the possible testimony (expert testimony on DNA, hair, fingerprint, and firearm analysis, and testimony of lay witnesses from the banks), as well as the number of potential witnesses at trial (potentially sixty government witnesses). *Id.* at

8

1-2.  In its order, the Court noted that it was "the consensus of the parties and the Court that it would be unlikely that this case would be ready to proceed to trial within the next several months due to the extensive discovery involved, the complexity of the case, and the breadth of forensic evidence requiring expert testimony." *Id.* at 2.

The Court, specifically with the consent of Defendants, their counsel, and the Government, ultimately held that: (1) the case was so unusual or so complex, due to the nature of the prosecution that it was unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established under the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(A),[3] (B)(ii) (2004)[4]; (2) the failure to grant the requested additional time to prepare the case would result in a miscarriage of justice to the Defendants, 18 U.S.C. § 3161(h)(8)(B)(i) (2004)[5]; and (3) the failure to grant the requested additional time would deny the Defendants

---

[3] Pursuant to 18 U.S.C. § 3161(h)(8)(A) (2004), the statute provides:

Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

[4] Pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii) (2004), the statute provides that a judge considering whether to grant a continuance shall consider "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section."

[5] Pursuant to 18 U.S.C. § 3161(h)(8)(B)(i) (2004), the statute provides that a judge

reasonable time necessary for the effective preparation of the case, taking into account the exercise of due diligence, 18 U.S.C. § 3161(h)(8)(B)(iv) (2004)[6]. *Id.* at 2-3. Based on these findings, the Court concluded that the ends of justice required that the case proceed to trial outside of the 70-day period prescribed by the Speedy Trial Act. *Id.* at 3.

Stoddard argues that his trial counsel was deficient in consenting to the tolling of Speedy Trial Act time period, and for failing to move to dismiss the indictment based on a violation of the Act. Def.'s Response at 2. However, given the Court's specific written findings tolling the time frame under the Speedy Trial Act in compliance with the requirements of 18 U.S.C. § 3161(h) (2004), the Court finds that Stoddard's related ineffective assistance of counsel claim fails because Stoddard cannot establish that he was prejudiced from his counsel's failure to object to the tolling of the time or his failure to move to dismiss the indictment.

Even assuming *arguendo* that Stoddard was not advised of his statutory Speedy Trial rights by his counsel and that his counsel consented to the tolling of the time without Stoddard's consent, Stoddard was not prejudiced by this error. The Court tolled the time under the Speedy Trial Act pursuant to 18 U.S.C. §§ 3161(h)(8)(A), (B)(i), (B)(ii) & B(iv) (2004). None of those

considering whether to grant a continuance shall consider "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice."

[6] Pursuant to 18 U.S.C. § 3161(h)(8)(B)(iv) (2004), the statute provides that a judge considering whether to grant a continuance shall consider:

Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex . . . . would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

provisions require the consent of the defendant.  Rather, a party or the Court may move for tolling under these provisions, but the Court applying the appropriate legal standard must determine whether such a continuance is permissible.  Accordingly, even if Stoddard's counsel had objected to the tolling of the time prior to the entry of the Court's findings, it is not reasonable to conclude that this objection would have dissuaded this Court from finding that the case was complex and that all parties needed additional time to prepare given that this was a case involving several codefendants alleged to have been involved in a conspiracy that included the armed robbery of six different banks.  Further, if Stoddard's counsel moved to dismiss the indictment on the basis that there was a violation of the Speedy Trial Act, it is not reasonable to conclude that this Court as the trial judge would have dismissed the indictment given that it followed the required procedures under the Act for tolling.  *See* Order (Oct. 4, 2004).  Finally, the Court notes that Stoddard and his codefendants filed 40 substantive pre-trial motions which added to the complexity of the case and independently tolled the Speedy Trial clock.[7]  *See* 18

---

[7] Perkins' Mot. for Discovery Stmt. of Co-Defendants and Co-Conspirators, ECF No. [128]; Perkins' Mot. for Disclosure of Favorable Evid. Against Witnesses Not Called to the Stand by Govt., ECF No. [129]; Perkins' Mot. for Disclosure of Identity of Confidential Informants, ECF No. [130]; Perkins' Mot. to Disclose All Instances Where Witnesses were Interviewed Jointly, ECF No. [131]; Perkins' Mot. for Relief from Prejudicial Joinder, ECF No. [211]; Jt. Mot. in Limine to Exclude Alleged Bad Acts and Uncharged Misconduct, ECF No. [134]; Aguiar's Mot. for Pretrial Identification and Production of Jencks Material, ECF No. [135]; Aguiar's Mot. to Sever Defendants and/or Mot. to Sever Counts, ECF No. [136]; Aguiar's Mot. to Disclose Identities of Each Confidential Informant Regardless of if they will be Called for Trial, ECF No. [137]; Burwell's Mot. for Notice of Intent to Introduce Uncharged Misconduct and Prior Convictions, ECF No. [138]; Burwell's Mot. to Compel Disclosure of Info. Regarding Confidential Informants, Witnesses and Cooperating Criminals, ECF No. [139]; Burwell's Mot. to Strike Alias, ECF No. [140]; Burwell's Mot. to Preserve Notes, Report and Evid., ECF No. [141]; Burwell's Mot. to Adopt Mot. filed on behalf of Co-Defendants, ECF No. [142]; Burwell's Mot. to Reveal the Identity of Informant(s) and the Basis of their Reliability, ECF No. [143]; Burwell's Mot. to Sever Count(s) and to Try Co-Defendants Separately, ECF

U.S.C. § 3161(h)(1)(F) (2004). Accordingly, the Court concludes that there was no Speedy Trial Act violation in the instant action regardless of the consent issue.

Turning next to Stoddard's claim under the Sixth Amendment, the D.C. Circuit recognized that "[t]he absence of a Speedy Trial Act violation does not *ipso facto* defeat a Sixth Amendment speedy trial claim." *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014), *cert. denied*, No. 14-6554, 2014 WL 5025855 (U.S. Nov. 10, 2014). Nonetheless, it is an unusual case in which the Act is followed but the Constitution is violated. *Id.* In order to determine whether a defendant's Sixth Amendment right to a speedy trial has been violated, the Court must consider four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Under the first factor, the defendant must make a threshold showing that the delay

---

No. [144]; Burwell's Mot. in Limine regarding Video Tape Evid., ECF No. [145]; Palmer's Mot. to Suppress Identification Evid., ECF No. [147]; Palmer's Mot. in Limine to Exclude Def. Marvin Palmer's Incarcerated Status in New York, ECF No. [149]; Palmer's Mot. to Adopt Codefendant's Mots., ECF No. [151]; Stoddard's Mot. for Bill of Particulars, ECF No. [152]; Stoddard's Mot. for Pretrial *James* Hrg., ECF No. [153]; Stoddard's Mot. to Strike, ECF No. [154]; Stoddard' Mot. to Bifurcate Trial, ECF No. [155]; Stoddard's Mot. to Sever Counts, ECF No. [156]; Stoddard's Mot. to Dismiss Count One of the Indictment, ECF No. [157]; Stoddard's Mot. to Suppress, ECF No. [158]; Stoddard's Mot. to Suppress Identification Evid., ECF No. [159]; Stoddard's Mot. to Suppress Evid., ECF No. [160]; Stoddard's Mot. to Sever Defs., ECF No. [161]; Morrow's Mot. to Suppress Identification Evid., ECF No. [162]; Morrow's Mot. to Identify Witnesses with Juvenile Adjudications and pending Juvenile Proceedings and to Inspect Juvenile Files, ECF No. [164]; Jt. Mot. for Relief from Improper Joinder, and Mot. for Severance of Offenses and/or Defs., ECF No. [165]; Jt. Mot. for In Camera Review of Grand Jury Testimony to Determine the Existence of a Racketeering Enterprise, ECF No. [166]; Perkins' Mot. to Adopt Mots. Filed on Behalf of Co-Defendants, ECF No. [167]; Perkins' Mot. to Suppress All Evid. Seized pursuant to a Constitutionally Defective Warrant, ECF No. [168]; Sld. Jt. Def. Motion to Dismiss Indictment, ECF No. [172]; Aguiar's Mot. to Prevent Govt. from Introducing Fed. R. 404(b) Evid. Against Def., ECF No. [464]; Perkins' Mot. for Change of Venue, ECF No. [196]; Palmer's Mot. for Determination of Crawford Parameters, ECF No. [226]. Additionally, the Government also filed one pre-trial motion. Govt.'s Motion in Limine and First Notice of Intention to Introduce Evid. Pursuant to Fed. R. Evid. 404(b), ECF No. [133].

between the accusation and the trial was presumptively prejudicial in order for the claim to

proceed.  *Id.*  If that threshold requirement is met, then the Court must consider the length of the

delay "as one factor among several, the extent to which the delay stretches beyond the bare

minimum needed to trigger judicial examination of the claim."  *Doggett v. United States*, 505

U.S. 647, 652 (1992).

The Court turns to the issue of whether the defendant has met the threshold requirement

of demonstrating that the delay was presumptively prejudicial.  "Presumptive prejudice  . . .

simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barke*r

enquiry."  *Doggett*, 505 U.S. at 652 n.1.  The determination as to whether a delay is

presumptively prejudicial is dependent upon the peculiar circumstances of the case.  *Barker*, 407

U.S. at 530-31.  The Supreme Court has suggested and this Circuit has not questioned that a

delay exceeding one year is presumptively prejudicial.  *Doggett*, 505 U.S. at 652 n.1; *United*

*States v. Marshall*, 669 F.3d 288, 295-96 (D.C. Cir. 2011) (requiring the district court to make

factual findings regarding defendant's allegation that the government did not overcome the

presumption of prejudice for delays over one year); *United States v. Taylor*, 497 F.3d 673, 677

(D.C. Cir. 2007), *cert. denied*, 552 U.S. 1222 (2008) (assuming without deciding that a delay

barely over one year between the indictment and trial was presumptively prejudicial); *United*

*States v. Homaune*, 898 F. Supp. 2d 153, 168-69 (D.D.C. 2012) ("Other circuits have generally

found a delay exceeding one year to be 'presumptively prejudicial,' and the D.C. Circuit has not

questioned that rule of thumb.").  The Court finds that the interval between Stoddard's

indictment and his trial, slightly over eight months, is not presumptively prejudicial in light of

the nature of the case.  Indeed, the instant action involved eight codefendants, a 20-count

indictment including two conspiracies charges, 40 pre-trial motions, and evidence from multiple expert and lay witnesses.  *See Barker*, 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."). Accordingly, the Court holds that Stoddard's claim related to the alleged constitutional violation of his speedy trial rights under the Sixth Amendment fails.  *Doggett*, 505 U.S. at 651-52 (noting that a defendant who fails to make a threshold showing that the delay was presumptively prejudicial cannot complain that the government denied him a speedy trial if his case was prosecuted with customary promptness).  The Court finds that Stoddard's counsel's failure to raise this issue either in trial or on appeal does not fall below the standards of professional norms given that Stoddard did not reach the threshold requirement of bringing a constitutional claim. Further, the Court finds that Stoddard's trial and appellate counsel did not render ineffective assistance of counsel by failing to raise this challenge because it is not reasonable to conclude that there would have been a different result had this issue been argued either prior to trial or on appeal.

Given that the Court followed the required process for tolling time under the Speedy Trial Act regardless of whether Stoddard consented to the tolling, Stoddard cannot establish that his counsel acted in an objectively unreasonable manner by failing to move to dismiss the case on the basis that the Court violated the 70-day requirement of the Act, nor can he establish that there is a reasonable likelihood of a different result had trial counsel made such a motion.  Further, Stoddard cannot establish that his counsel rendered ineffective assistance by failing to raise a constitutional challenge under the Sixth Amendment because Stoddard cannot meet the threshold requirement of bringing such a claim.  Accordingly, Stoddard's ineffective assistance of counsel

claim premised on counsel's failure to protect his statutory and constitutional speedy trial rights either prior to trial or on appeal is without merit.

### B. *Double Jeopardy and Multiplicity Challenges*

Stoddard next argues that his counsel was ineffective by failing to raise multiplicity and duplicity challenges to the indictment prior to trial, for failing to move to dismiss the indictment based on this challenge prior to trial, and for failing to raise this issue on appeal.   Def.'s Response at 7-11.  Specifically, Stoddard argues that his trial and appellate counsel failed to raise the following double jeopardy arguments: Counts I, II, III, V and VII are multiplicitous; Counts III, IV, VIII, IX, XII, XIII, and XVII are duplicitous; and that the language in these counts as to 18 U.S.C. § 2 (aiding and abetting) was surplusage and should be stricken.  *Id.* at 8.  Stoddard's claim both as applied to counsel at the trial and appellate levels fails for the reasons described herein.

Turning first to Stoddard's claim on the trial court level, counsel for Stoddard's codefendant filed a Joint Defense Motion to Dismiss the Indictment due to Multiplicitous and Duplicitous Charging, which was considered on behalf of all the codefendants, on February 1, 2005.  Sealed Jt. Def. Mot. to Dismiss Indictment, ECF No. [172].  The motion contained all the arguments related to multiplicity and duplicity raised by Stoddard in his ineffective assistance of counsel claim.[8]  The Court issued a Memorandum Opinion on March 16, 2005, finding that each

---

[8] The Court used almost exactly the same language that Stoddard used in his § 2255 motion to characterize the arguments made in the joint pre-trial motion:

Essentially, the Joint Defense Motion first claims that three sets of counts are "multiplicitous" and therefore in violation of the test for Double Jeopardy Clause violations identified in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct.

of the arguments was without merit.[9]  Memo. Op. (Mar. 16, 2005), at 13-22, ECF No. [437].

Accordingly, Stoddard cannot establish that his trial counsel was ineffective by failing to raise

these claims because it is clear from the record that he did timely raise these concerns on

Stoddard's behalf and the Court rejected them.

Turning next to Stoddard's claim on the appellate court level, Stoddard asserts that his

appellate counsel (who also served as his trial counsel) rendered ineffective assistance for failing

to raise these issues on appeal.  The *Strickland* standard applies to claims of ineffective

assistance of both trial and appellate counsel.  *Payne v. Stansberry*, 760 F.3d 10, 13 (D.C. Cir.

2014).  Accordingly, in order to prevail, Stoddard must demonstrate: "(1) his counsel's

performance 'fell below an objective standard of reasonableness,' and (2) 'there is a reasonable

---

> 180, 76 L.Ed. 306 (1932). Defendants identify Counts I and II, Counts V and VII,
> and Count III as multiplicitous. *See* Def.'s Mot. at 2-5. Second, Defendants
> contend that Counts III, IV, VIII, IX, XII, XIII, XVII, and XVIII are duplicitous
> because they allegedly charge more than one statutory violation in each count. *Id.*
> at 6. Third, Defendants claim, without any discussion, that the language in these
> counts as to 18 U.S.C. § 2 (aiding and abetting) is surplusage that should be
> stricken. *Id.* at 7.

Memo. Op. (Mar. 16, 2005), at 13-14.

[9] The Court notes that in its Memorandum Opinion, it adopted the numbering scheme for the Counts from an earlier Indictment filed on November 9, 2004. Memo. Op. (Mar. 16, 2005), at 2 n.1.  Stoddard only raises specific arguments in the instant motion related to Counts I, II, III, and V.  The Court notes that Stoddard was not charged under either Count III or V of the indictment, however, he was charged with Racketeering Acts 3 and 5 under Count I.  *See* Def.'s Response at 9-11.  Regardless, the Court notes that the numbering of Counts I, II, and III and the Racketeering Acts related to Count I remain consistent between the earlier indictment relied on by the Court in its Memorandum Opinion and the controlling indictment, filed on February 15, 2005, under which Stoddard was convicted.  *Compare* Superseding Indictment (Nov. 9, 2004), ECF No. [115] *with* Superseding Indictment (Feb. 15, 2005), ECF No. [175].  Count V relates to different codefendants in the different indictments, however, Stoddard was not charged under Count V pursuant to either indictment.  Accordingly, it is clear that the Court previously ruled on the challenges raised in Stoddard's motion that relate to Counts under which Stoddard actually was charged.

16

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)).  As the Supreme Court has noted, "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  However, the Court noted that "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent." *Id.*

In the instant action, Stoddard's counsel raised several claims on his behalf on appeal. Specifically, counsel argued several points that extended to all the codefendants, including challenging the Court's admission of evidence of uncharged crimes against the codefendants, exclusion of other crimes evidence related to a key government witness in order to demonstrate bias and motive to falsely implicate codefendants, and exclusion of extrinsic evidence that one government witnesses said that he was going to lie. Jt. Brief of the Appellants at 15-63, Burwell et al v. United States, No. 06-3071 (D.C. Cir. Oct. 2, 2009).  Appellate counsel also raised several arguments specifically related to Stoddard.  Specifically, counsel argued that this Court should have severed Stoddard's case because the other crimes evidence admitted against the codefendants prejudiced Stoddard, *id.* at 66-68, and that evidence presented against Stoddard was insufficient to sustain his conviction, *id.* at 87-88.

Stoddard's counsel chose not to raise the double jeopardy challenges on appeal in favor of raising other claims on Stoddard's behalf.  Here, the Court cannot conclude that appellate counsel's decision not to raise the duplicity and multiplicity arguments was objectively unreasonable given professional norms, nor can the Court conclude that if appellate counsel had

17

raised this issue, that there is a reasonable probability of a different result on appeal.  Indeed, it is clear from the record that Stoddard's appellate counsel chose to raise certain arguments that he deemed stronger than the double jeopardy arguments on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").  This tactical decision does not fall outside the bounds of professional norms.  Further, for the reasons laid out in the Court's comprehensive Memorandum Opinion on these issues which the Court incorporates herein, Memo. Op. (Mar. 16, 2005), at 13-22, the Court concludes that had appellate counsel raised this issue on appeal, there is not a reasonable probability that the result would have been different.[10]  Accordingly, the Court finds that Stoddard is not entitled to relief on his ineffective assistance of counsel claims related to the multiplicity and duplicity challenges to the indictment.

### C. *Confrontation Clause Challenge*

Stoddard next alleges that his trial and appellate counsel rendered ineffective assistance of counsel by failing to raise a "*Crawford/Melendez* argument."  Def.'s Mot. at 6.  Stoddard

---

[10] Stoddard argues that Counts I and III constitute the same offense.  The Court notes that Stoddard was not charged under Count III of the indictment.  However, based on the statutory provisions that he cites, he actually appears to be discussing Count I, brought under 18 U.S.C. § 1962(d), and Count II, brought under 18 U.S.C. § 371.  *See* Def.'s Response at 9-11; Indictment (Feb. 15, 2005), at 1-16.  The Court analyzed and rejected this argument in its Memorandum Opinion.  Memo. Op. (Mar. 16, 2005), at 14-16.  Stoddard also appears to argue that Counts II and V are multiplicitous.  If Stoddard is in fact discussing Count V, the Court notes that he was not charged under this Count and, thus, this discussion is not relevant as to the charges specifically related to him.  To the extent that Stoddard may be arguing that Racketeering Act 5 of Count I and Count II of the indictment are multiplicitous, *see* Def.'s Response at 10, the Court notes that its earlier ruling on Counts I and II is applicable, *see* Memo. Op. (Mar. 16, 2005), at 14-16.

18

provides no additional information related to this argument nor does he point to any specific evidence to which he believes this argument should have been made. *See id.* The Government in its opposition indicates that Stoddard seems to contend that this objection applies to records and affidavits admitted into evidence at trial to establish that the banks that were robbed were Federal Deposit Insurance Corporation ("FDIC") insured, one of the elements of Count II. Govt.'s Opp'n 14-16. The Court shall accept the Government's proposal as Stoddard's argument since Stoddard did not counter the argument or provide any additional information in his subsequently filed response to the Government's opposition. *See generally* Def.'s Response. The Court finds that this claim is without merit for the several reasons described below.

Four pieces of evidence were admitted at trial establishing the insured status of four banks – Bank of America, Riggs Bank, Chevy Chase Bank, and SunTrust – along with affidavits attesting to the fact that the documents were official records of the FDIC; the records and accompanying affidavits were admitted into evidence at trial without objection. *See* Ex. CCB-001 (Proof of Insured Status for Chevy Chase Bank), ECF No. [837-1]; RB-001 (Proof of Insured Status for Riggs Bank), ECF No. [837-2]; BOA-001 (Proof of Insured Status for Bank of America), ECF No. [837-3]; SUN-001 (Proof of Insured Status for SunTrust Bank), ECF No. [837-4].

Stoddard points to the Supreme Court's holding in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), in which the Court held that affidavits showing the results of forensic analyses performed on seized substances are testimonial statements and, accordingly, analysts are witnesses under the Confrontation Clause of the Sixth Amendment. *Id.* at 309-11. The Court clarified that affidavits "'made under circumstances which would lead an objective witness

reasonably to believe that the statement would be available for use at a later trial,'" *id.* at 311

(quoting *Crawford v. Washington*, 541 U.S. 36, 52 (2004)), are testimonial statements and,

accordingly, the authors of such affidavits are witnesses for the purposes of the Confrontation

Clause of the Sixth Amendment. *Id.* at 311.  The Court found that "[a]bsent a showing that the

[authors of the affidavits] were unavailable to testify at trial *and* that petitioner had a prior

opportunity to cross-examine them, petitioner was entitled to 'be confronted with' the [authors of

the affidavits] at trial.'"   *Id.*   It appears that Stoddard is asserting that his trial and appellate

counsel rendered ineffective assistance of counsel by failing to raise a Confrontation Clause

challenge to the admissibility of the affidavits filed alongside records reflecting that the banks

were insured by the FDIC because the authors of the affidavits did not testify at trial.  The Court

finds that this argument fails based on the relevant case law on this issue.

First, Stoddard's claim fails because the official records and accompanying affidavits

were not testimonial and, thus, do not invoke Confrontation Clause challenges. As the

Government properly points out, the records themselves were admitted into evidence under the

public records exception to the hearsay rule.  *See* Fed. R. Evid. 803(8) (Hearsay Exception for

Public Records).  Further, the affidavits were admitted pursuant to Federal Rule of Evidence

902(4), to establish that the evidence was self-authenticating as certified copies of public records.

Indeed, the Supreme Court in *Melendez-Diaz*, appeared to distinguish between situations

in which an affidavit is used to authenticate an otherwise admissible record from an affidavit

created for the sole purpose of providing evidence against a defendant.  *See Melendez-Diaz*, 557

U.S. at 322-23 ("A clerk could by affidavit *authenticate* or provide a copy of an otherwise

admissible record, but could not do what the analysts did here: create a record for the sole

purpose of providing evidence against a defendant"). This Court itself has held that an affidavit certifying the authenticity of a record is not testimonial and, accordingly, not subject to the Confrontation Clause. As this Court held, "[i]t is the records, *not* the certification, that are introduced into substantive evidence against the defendant during trial. The certifications at issue are simply 'too far removed from the 'the principal evil at which the *Confrontation Clause* was directed' to be considered testimonial.'" *United States v. Edwards*, Crim. Case No. 11-129-1, 1, 11 (CKK), 2012 WL 5522157, at *2 (D.D.C. Nov. 15, 2012) (quoting *United States v. Ellis*, 460 F.3d 920, 920 (7th Cir. 2006)). The Court finds the affidavits were not testimonial within the meaning of the Confrontation Clause because the affidavits in question were created only to certify the authenticity of the public records, and not to provide substantive evidence against Stoddard at trial.

Second, Stoddard's claim fails because there was independent testimony at trial that each of the four banks was FDIC-insured and Stoddard's counsel was presented with the opportunity to cross-examine these witnesses on the issue. Tr. 1216:6-21 (Apr. 18, 2005) (Testimony of Viola J. Scott, banking center manager at Bank of America branch); Tr. 1463:23—1464:10 (Apr. 19, 2005) (Testimony of Ricardo Young, assistant manager at Riggs Bank branch); Tr. 1543:5-19 (Apr. 20, 2005) (Testimony of Jacqueline Caldwell, bank manager at Chevy Chase Bank branch in Hyattsville, MD); Tr. 1634:15-23 (April 20, 2005) (Testimony of Curtis Oliver, branch manager at Chevy Chase Bank branch in Silver Hill, MD); Tr. 2168:11—2169:2 (Apr. 25, 2005) (Testimony of Charlene Hollings, branch manager of SunTrust Bank branch). Finally, Stoddard's claim fails because he has not pointed to any evidence that his counsel failed to present that refuted the assertion that the banks were in fact FDIC-insured, nor does Stoddard

himself at this juncture appear to be claiming that the banks were not FDIC-insured.

Given that the evidence in question does not raise Confrontation Clause concerns and that defense counsel was presented with the opportunity to cross-examine witnesses who testified that each bank was FDIC-insured, the Court finds that both trial counsel and appellate counsel did not act in an objectively unreasonable manner by failing to raise this challenge either at trial or on appeal. Nor does the Court find that Stoddard was prejudiced by counsel's failure to raise this claim because Stoddard has not pointed to any evidence to rebut the claim that the banks were FDIC-insured. Accordingly, the Court concludes that Stoddard's claim that his counsel rendered him ineffective assistance of counsel by failing to raise a Confrontation Clause challenge either at trial or on appeal is without merit.

### D. *Informant Jury Instruction*

Finally, Stoddard argues that his trial counsel rendered him ineffective assistance of counsel by failing to request an informant jury instruction. Def.'s Mot. at 5. However, Stoddard only raises this issue in his original motion and does not provide any additional briefing on this issue in his reply. *See generally* Def.'s Response. Stoddard's claim fails because the record reflects that the Court did, in fact, give instructions regarding witnesses with plea agreements and witnesses who are accomplices. The instructions as read during trial follow:

> Now, you've heard evidence that Noureddine Chtaini, Omar Holmes and Antwon Perry each entered into separate plea agreements with the government, pursuant to which each of these witnesses agreed to testify truthfully in this case, and the government agreed to dismiss charges against him and/or decline prosecution of charges against him, and bring the witness's cooperation to the attention of the sentencing court on the remaining charges.

> The government is permitted to enter into this kind of plea agreement. You in turn may accept the testimony of such a witness and convict the defendant on the basis

of this testimony alone, if it convinces you of the defendant's guilt beyond reasonable doubt.

A witness who has entered into a plea agreement is under the same obligation to tell the truth as is any other witness, because the plea agreement does not protect him against prosecution for perjury or false statement, should he lie under oath.

However, you may consider whether a witness who has entered into such an agreement has an interest different from any other witness. A witness who realizes that he may be able to obtain his own freedom or receive a lighter sentence by giving testimony may have a motive to lie.

The testimony of a witness who has entered into a plea agreement should be received with caution and scrutinized with care. You should give the testimony such weight as in your judgment it's fairly entitled to receive.

Now, you've also heard that Omar Holmes and Noureddine Chtaini were accomplices. Accomplices in the commission of a crime are competent witnesses, and the government has the right to use them as witnesses. An accomplice is anyone who knowingly and voluntarily cooperates with, aids, assists, advises or encourages another person in the commission of a crime, regardless of his degree of participation.

The testimony of an alleged accomplice should be received with caution and scrutinized with care. You should give it such weight as in your judgment it's fairly entitled to receive. If the testimony of an alleged accomplice is not supported by other evidence, you may convict the defendant upon that testimony only if you believe that it proves the guilt of the defendant beyond a reasonable doubt.

Tr. 7996:1–7997:16 (Jun. 21, 2005). Accordingly, Stoddard's ineffective assistance of counsel fails on this issue both as applied his counsel at trial and on appeal because the Court did give the relevant instruction.

### E.  *Letter from Mr. Stoddard*

The Court notes that it received a letter from Stoddard that it granted leave to file on March 27, 2014. Letter (Mar. 27, 2014), ECF No. [824]. In the letter, Mr. Stoddard requested that the Court help him find legal assistance because the person who was assisting him at the

Federal Public Defender is no longer employed there.  The Court shall construe this letter as a request to appoint counsel.  Given that the Court has determined that a hearing is not necessary in this matter, the Court finds that the interests of justice do not require that the Court appoint Stoddard counsel in this matter and, accordingly, his request is denied.  *See* 18 U.S.C. § 3006A(a)(2)(B).

### E.  *Certificate of Appealability*

When the district court enters a final order resolving a petition under 28 U.S.C. § 2255 that is adverse to the petitioner, it must either issue or deny a certificate of appealability.  Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 11(a).  By statute, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Such a showing demands that Stoddard demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For the reasons set forth above, the Court concludes that Stoddard has failed to make that showing in this case, and, accordingly, no certificate of appealability shall issue from this Court.  To the extent Stoddard intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22(b).

## IV.  CONCLUSION

For the foregoing reasons, the Court finds no reason to set aside Stoddard's conviction or

sentence.   Accordingly, Stoddard's [773] Motion to Vacate, Set Aside, or Correct Sentence is DENIED.   Furthermore, no Certificate of Appealability shall issue from this Court.   To the extent Stoddard intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22.   An appropriate Order accompanies this Memorandum Opinion.

An appropriate Order accompanies this Memorandum Opinion.

***This is a final appealable order.***


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE